Miroslaw ZELMAN, Edward A. Wolkenstein and Everett Jones

v.

BETHLEHEM STEEL COMPANY and United Steelworkers of America, AFL–CIO.

Civ. A. No. 26823.

United States District Court
E. D. Pennsylvania.

Sept. 2, 1960.

A. Harry Levitan, Philadelphia, Pa., and Rabinowitz & Boudin, New York City, for plaintiff.

Philip H. Strubing, Philadelphia, Pa., and Ralph L. McAfee, New York City, and Cravath, Swaine & Moore, New York City, of counsel, for Bethlehem Steel Co.

Gerber & Galfand, Alan M. Spector, Philadelphia, Pa., and Goldberg, Feller & Bredhoff, David E. Feller, Washington, D. C., for United Steelworkers of America.

KRAFT, District Judge.

This action is before us on defendants' motions, inter alia, to transfer the case to the United States District Court for the Western District of New York, pursuant to 28 U.S.C. § 1404(a).

The facts averred in the complaint may be briefly summarized. Plaintiffs are citizens of the State of New York, and reside in the City of Buffalo, which is in the Western District of New York. For a number of years prior to October 1, 1957, plaintiffs were employed by defendant, Bethlehem Steel Company (Company), at its plant in Lackawanna, New York, in the same District. Plaintiffs were members of the defendant, United Steelworkers of America, AFL-CIO (Union), which was the collective bargaining agent for the Company's employees at the Lackawanna plant.

On October 1, 1957, plaintiffs testified before the Committee on Un-American Activities of the House of Representatives and, in response to certain questions put to them by the Committee, pleaded their privilege under the Fifth Amendment of the United States Constitution. It appears from the Company's affidavit, and it is not denied, that the hearings before the House Committee were held in Buffalo.

Thereafter, the Company suspended and ultimately discharged the plaintiffs from their employment. Over a period of several weeks, there were pre-discharge hearings and ensuing grievance proceedings, all of which took place in the Buffalo area.

The core of plaintiffs' complaint is that the Company's action in discharging them was without just cause and in violation of their rights under the contract, and that the Union failed diligently to prosecute their resulting grievances. They seek an order directing the Union to proceed with an effort to settle plaintiffs' grievances, and, failing agreement, that the Company and the Union be directed to proceed to arbitration; or, in the alternative, that each plaintiff have judgment against the Company for damages in the sum of $75,000.

The statute provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The present action could have been brought and service obtained in the Western District of New York, and the recital of the facts indicates that that was the logical forum. All the acts and events constituting the basis of plaintiffs' complaints took place in the Buffalo area. It would appear self evident that transfer of the action would serve the convenience of the parties and witnesses. Trial in this District, on the other hand, must result inevitably in serious inconvenience to defendants and their witnesses, and, one might suppose, to the plaintiffs themselves. The Company's affidavit states that it proposes to call as witnesses management personnel (naming them) at the Lackawanna plant who are familiar with the circumstances preceding plaintiffs' discharges, who took part in the decision to terminate plaintiffs' employment and who participated in conferences with plaintiffs, the pre-discharge hearings and the grievance proceedings under the agreement. It is as-

248

serted that these witnesses have offices and reside in or near Buffalo; that two of these witnesses have the primary responsibility for industrial relations at the Lackawanna plant and their absence would impair administration of the industrial relations program there; that the management of the plant would be handicapped if it were necessary for a named witness to be in Philadelphia for the trial; that if the trial were held in Buffalo, these witnesses could devote time to their duties even on those days when their attendance was required at the trial so that normal operating procedures would not be disturbed.

Plaintiffs do not deny the truth of these averments. They assert, however, that there are "substantially" no factual issues to be tried, the principal question being one of law. It is a hazardous undertaking, at best, to make any such prediction in the absence of answer filed. Moreover, our experience in this troubled field of litigation persuades us that the case may well present serious and intricate issues of fact.

Plaintiffs further contend that insofar as factual issues may arise, this forum is more convenient than the Western District of New York; that the principal defendant is the corporation; that upon information and belief, the decision to discharge plaintiffs was made by the Company's principal office in this district and not by subordinate officials in New York. Speaking of the Union's determination not to seek arbitration, plaintiffs say, "Here again an important determination of policy was made, not by the locals in Buffalo but by the national office of the union located in this state." Apart from the conjectural and speculative character of these considerations, it still remains true that plaintiffs can produce the testimony of Union and Company officials at trial in Buffalo with far less inconvenience to themselves than would be visited upon defendants by trial in this District.

■ The third test under the statute is "in the interest of justice." Consider-

ations of public interest include the undesirability of piling up litigation in congested centers, the burden of jury duty on people of a community having no relation to the litigation, the local interest in having localized controversies decided at home, the unnecessary injection of problems in conflict of laws. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. Particularly to be noted is the relative condition of the court calendars in this District and the Western District of New York. Reference to the most recent statistics of the Administrative Office discloses that the time interval from filing to trial of civil cases is 25.0 and 11.3 months, respectively. Civil cases pending number 3993 and 411, respectively. Clearly, the public interest in the prompt and orderly administration of justice, and considerations of practical convenience, alike, dictate transfer.

■ We are not unmindful of the consideration due the plaintiffs' choice of forum. However, some limitation of a plaintiff's choice is inherent in the very nature and purpose of the statute. In All States Freight v. Modarelli, 3 Cir., 1952, 196 F.2d 1010, the Court of Appeals of this Circuit considered the purpose and effect of Sec. 1404(a), and sharply distinguished it from the forum non conveniens doctrine (at page 1011):

"The statute limits the privilege of the plaintiff to have his lawsuit tried in the forum of his choosing if he can there get jurisdiction over the defendant. The purpose of the limitation is clearly to make the inevitably uncomfortable (for the litigant) judicial process cheaper and more convenient and, if possible, more prompt. * * * Its words should be considered for what they say, not with preconceived limitations derived from the forum non conveniens doctrine."

Careful consideration of all the relevant factors persuades us that defendants' motions to transfer should be granted. It is accordingly unnecessary to consider defendants' other motions.